ALFRED L. SEARCY,                    )
                                     )
    Plaintiff,                       )
                                     )        No. 1:05CV00100 FRB
                                     )
v.                                   )
                                     )
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social Security,     )
                                     )
    Defendant.                       )


## MEMORANDUM AND ORDER

       This matter is on appeal for review of an adverse ruling by the Social Security Administration. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

## I.  Procedural Background

       On June 25, 2003, plaintiff Alfred L. Searcy ("plaintiff") filed an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. (Tr. 41-43.) The record indicates that plaintiff also filed an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., but plaintiff's application and related documents were unavailable for inclusion in the administrative transcript. (Tr. 4.) The record does indicate that plaintiff's SSI application was filed on June 28, 2003, and that it

was denied on September 12, 2003.[1]  Id.  Plaintiff alleges that he became disabled as of January 1, 1993, due to an irregular heartbeat, kidney and liver problems, shortness of breath, vision problems (paralysis in the left eye since birth, and apparent cloudiness in the right eye), diabetes, hypertension and back pain. (Tr. 29.)

On September 23, 2003, plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (Tr. 29.)  On November 15, 2004, a hearing was held before an ALJ in Cape Girardeau, Missouri, during which plaintiff testified and was represented by attorney Anthony Bartel.  (Tr. 15; 261-79.)  On February 25, 2005, the ALJ issued a decision unfavorable to plaintiff, and plaintiff filed a Request for Review of Hearing Decision, which was received on March 2, 2005.  (Tr. 12-20; 10-11.)  On June 10, 2005, the Appeals Council denied plaintiff's request for review.  (Tr. 6-9.)  The ALJ's decision thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).[2]

## II.  Evidence Before the ALJ

---

[1]Neither party disputes that plaintiff's SSI application was made and administratively denied.

[2]The ALJ in this case noted that, preceding the filing of the case at bar, plaintiff filed a Title XVI application on January 17, 2002, which was denied initially, upon reconsideration, and by Administrative Law Judge Julian Constentino at the hearing level on January 22, 2003.  (Tr. 15.) (These materials were not included in the present transcript.)  Noting this history, the ALJ found that, because the January 22, 2003 decision was administratively final, the earliest date that plaintiff was eligible for disability benefits was January 23, 2003.  Id.  On appeal, plaintiff does not allege error in so limiting the period covered by his current application.

A.    <u>Testimony of Plaintiff</u>

        At the hearing on November 15, 2004, plaintiff responded
to questioning from the ALJ.  Plaintiff was born on May 20, 1946,
completed the tenth grade, and never obtained a GED.  (Tr. 265.)
Plaintiff can read and write simple words.  <u>Id.</u>  Plaintiff testified
that he last worked four and one-half years ago, helping the
landlord of his trailer park.  <u>Id.</u>  Plaintiff currently resides with
a friend in the Pecan Acres Trailer Park, Lot 20.  (Tr. 270.)
Plaintiff testified that he is unable to work due to his blood
pressure, heart problems, and constant fatigue.  (Tr. 265-66.)
Plaintiff testified that he has not had a driver's license for the
past eleven or twelve years, and relies upon friends for
transportation.  (Tr. 270; 272.)  Plaintiff testified that his
roommate's girlfriend drove him to the hearing.  (Tr. 268.)

        Plaintiff testified that he rarely smokes, and when he
does, he smokes a cigar and does not inhale.  (Tr. 266.)  Plaintiff
stated that no doctor has instructed him to stop smoking, but then
indicated that he informs his doctors that he does not smoke.  <u>Id.</u>
The ALJ then inquired regarding plaintiff's current medical
treatment, and plaintiff testified that his doctor gives him
checkups and occasionally adjusts his medication.  (Tr. 266-67.)
Plaintiff testified that he takes six different medications, and
also takes Nitroglycerin for his heart condition.  (Tr. 267.)
Plaintiff testified that his heart causes him severe pain, and that
he last saw a doctor for this condition three months prior to the

hearing.  Id.  Plaintiff testified that the doctor recommended testing which plaintiff did not undergo due to lack of transportation.  (Tr. 267-68.)  Plaintiff testified that he takes a small amount of Nitroglycerin as needed to control his pain, but that sometimes a week elapsed when he did not need it.  (Tr. 269.)

Regarding his daily activities, plaintiff testified that he spent four or five hours per day watching television.  (Tr. 269.) Plaintiff denied any hobbies, but did state that he attended church approximately once per month.  Id.  Plaintiff denied currently receiving mental health treatment, and further denied drinking alcohol for the past month.  (Tr. 271.)  Plaintiff testified that his past alcohol use was very moderate.  Id.  Plaintiff denied being involved in AA or any other alcohol treatment program.  Id.

Plaintiff testified that he was unable to work due to fatigue, high blood pressure, and weakness in his fingers and hands. (Tr. 271.)  He testified that he suffers from numbness in both hands, and wears braces which were prescribed by a doctor.  (Tr. 271-72.)  When the ALJ noted that plaintiff was not presently wearing any braces, plaintiff stated that he had been rushed that morning due to problems arranging transportation, and had left his braces and his Nitroglycerin at home.  (Tr. 272.)

Regarding his alleged vision problems, plaintiff testified that he was unable to read very fine print.  (Tr. 275.)  Plaintiff testified that he saw a specialist, whose name he did not recall, who allegedly told plaintiff's physician that plaintiff was "fixing

to go blind." (Tr. 275.) However, plaintiff testified that he does not ever wear glasses.  Id.

B.  Testimony of Vocational Expert George Meyers

The ALJ also heard testimony from Mr. George Meyers, a vocational expert.[3]  (Tr. 272.)  Mr. Meyers testified that most of plaintiff's past relevant work over the previous fifteen years was medium unskilled work, with the exception of plaintiff's prior work as a sheet metal grinder, which was medium semi-skilled work  (Tr. 273-74.)  Mr. Meyers testified that plaintiff had no transferable skills from his past semi-skilled work.  (Tr. 274.)  The ALJ then asked Mr. Meyers to assume a hypothetical in which an individual could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry up to 25 pounds, and sit, stand and/or walk six out of eight hours, but who had an inability to perform work requiring near acuity or fine vision skills, and an inability to work around hazards such as moving, dangerous machinery or unprotected heights.  (Tr. 274-76.)  Mr. Meyers testified that an individual with such limitations would be unable to perform plaintiff's past work, but that such an individual could perform work as a janitor/cleaner (medium/unskilled work), and as a food preparation worker (medium, unskilled work).[4]  (Tr. 276-77.)  Mr.

---

[3]Plaintiff's attorney stipulated that Mr. Meyers was a fully qualified vocational expert.  (Tr. 273.)

[4]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c)

Meyers testified that, in Missouri, there were 28,000 janitor/cleaner jobs, and 8,000 food preparation worker jobs. (Tr. 276.)

The ALJ then asked Mr. Meyers to assume a second hypothetical, involving a person with the following abilities, limitations, and requirements: an ability to sit, stand and walk six out of eight hours; an ability to lift and/or carry less than ten pounds each; an inability to climb, balance, stoop, kneel, crouch or crawl; an inability to perform job duties involving fine visual skills or depth perception; and a requirement of numerous unscheduled breaks from work throughout the day. (Tr. 277.) In response to questioning from the ALJ, Mr. Meyers agreed that there were no jobs, either past relevant or otherwise, that such a person could perform. Id.

## III. Medical Records[5]

Records from Baptist Memorial Hospital indicate that plaintiff was seen on November 20, 2001 for a scalp laceration resulting from an accidental fall. (Tr. 74-81.) The records

---

[5]Included in this summary of the medical records are materials dating from the earlier, previously adjudicated period, as such materials were part of the record considered by the ALJ in the instant case, and are relevant to the plaintiff's medical history. See Hamlin v. Barnhart, 365 F.3d 1208, 1215-16 (10th Cir. 2004).

Additional evidence which was not before the ALJ was submitted to and considered by the Appeals Council. This evidence consists of medical records from Jennie Bourne dated December 9, 2004 through December 30, 2004 (Tr. 246-47); medical records from Dr. Tim McPherson dated December 3, 2004 through December 28, 2004 (Tr. 250-56); and a letter from plaintiff's attorney, Anthony W. Bartels, dated April 27, 2005. (Tr. 257-60.) For the sake of consistency, the medical records submitted to the Appeals Council are incorporated into the following summary of the medical records.

indicate the assessment that plaintiff fell due to ETOH intoxication. (Tr. 79.) A CT scan of plaintiff's head yielded normal findings. (Tr. 81.)

Records from the Twin River Regional Medical Center indicate that plaintiff was seen in the emergency room on January 6, 2002, with complaints of tingling in his left arm and pain on the left side of his chest wall. (Tr. 83-84.) Plaintiff reported that he drank a six-pack of alcohol every day. Id. Plaintiff was diagnosed with chest wall pain, alcohol intoxication, and possible alcoholic hepatitis. (Tr. 83.) X-rays of plaintiff's cervical spine revealed narrowing of the disc spaces at C5-C6, and C6-C7. (Tr. 89.) X-rays of plaintiff's left shoulder and his chest were negative. (Tr. 89-90.) An ECG exam was also negative. (Tr. 91.)

Records from the Family Counseling Center indicate that plaintiff was seen for an initial assessment on July 30, 2002.[6] (Tr. 197-207.) It is noted that plaintiff was referred by an attorney, and that he had received no prior treatment. (Tr. 198.) It was noted that plaintiff began drinking following a divorce, and that he lost his driver's license four to five years ago. (Tr. 200.) Plaintiff indicated that his goals were to "get my disability" and have "someone to talk to." (Tr. 207.) Plaintiff was diagnosed with depression. (Tr. 206.)

---

[6]In a letter dated April 29, 2004, Ms. Susan Thompson, the office manager of Family Counseling Center, indicates that plaintiff appeared for an intake assessment on July 30, 2002, but failed to return for his next appointment. (Tr. 197.)

On December 5, 2002, while under the care of Dr. Muhammad Azharuddin, plaintiff was admitted to the telemetry floor of the Pemiscot Memorial Hospital in Hayti, Missouri with complaints of shortness of breath and left-sided chest and arm pain. (Tr. 112.) Plaintiff's recent diagnosis of diabetes was noted. (Tr. 111.) Plaintiff was diagnosed with unstable angina, hypertension, and newly-diagnosed diabetes mellitus. (Tr. 111.) It was further noted that plaintiff carried the diagnosis of chronic alcoholism and alcoholic cirrhosis. (Tr. 111-12.) Testing ruled out myocardial infarction. (Tr. 111.) Radiological studies of plaintiff's chest revealed no significant abnormality, and an echocardiogram yielded normal results. (Tr. 121-22.)

On December 5, 2002, Dr. Azharuddin completed a Missouri Department of Social Services Medical Report, which included a disability evaluation, in which he opined that plaintiff suffered from chest pain, shortness of breath, hypertension, diabetes, alcoholism, depression, low back pain, and urinary incontinence, and further stated that plaintiff required treatment for diabetes and hypertension.[7] (Tr. 99-100.) Dr. Azharuddin noted normal sinus rhythm. (Tr. 99.) Dr. Azharuddin recommended plaintiff undergo a

---

[7]In his brief, when plaintiff refers to this report, he indicates that it is dated November 20, 2002. Although this date indeed appears in the information block at the top of the first page, this part of the form appears to have been completed by someone other than Dr. Azharuddin, as the handwriting is significantly different from his. See (Tr. 99.) Because of this, and because Dr. Azharuddin signed the form and dated it December 5, 2002, the undersigned will use this as the operative date. See (Tr. 100.)

cardiac catheterization to rule out arterial blockage.  Id.  At the
end of the form, Dr. Azharuddin checked a box indicating that
plaintiff had a disability preventing him from engaging in
employment for which his age, training, experience or education
befitted him.  (Tr. 100.)

On December 18, 2002, plaintiff presented to Dr. Steven
Gubin for cardiac evaluation, still complaining of occasional chest
pain.[8]  (Tr. 103, 213.)  Dr. Gubin noted that plaintiff was taking
aspirin, Toprol,[9] Zestril,[10] Glucophage,[11] and Nitroglycerin.[12]  Id.
Dr. Gubin diagnosed plaintiff with occasional chest pain and fairly
well-controlled hypertension, and recommended an Adenosine Thallium
Scan, but indicated that this would be postponed until plaintiff
could obtain insurance.  Id.

A chest x-ray performed on March 18, 2003 at Pemiscot
Memorial Health System revealed normal findings related to
plaintiff's heart, lungs, bones and soft tissues.  (Tr. 106.)

---

[8]The undersigned notes that Dr. Gubin's office note indicates that
plaintiff's name is "Alfred Stacy."  (Tr. 103, 213.)  The undersigned has
reviewed the materials in the context of the entire record, and concludes that
this is merely a typographical error.  See Quaite v. Barnhart, 312 F. Supp. 2d
1195, 1199-1200 (E.D. Mo. 2004) (whether misstatement is typographical error
is to be determined by reading misstatement in context of entire opinion.)

[9]Toprol is a beta-blocker indicated for use in the treatment of
hypertension.  http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202087.html

[10]Zestril is an ACE inhibitor indicated for use in the treatment of
hypertension.  http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202044.html

[11]Glucophage is indicated for use in the treatment of type-2 diabetes.
http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202756.html

[12]Nitroglycerin is indicated for use in the treatment of chest pain.
http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202411.html

Records from the Steele Family Rural Health Clinic
("Steele Clinic"), which is the office of Dr. Timothy McPherson,
indicate that plaintiff was seen on April 1, 2003, and that his
history of diabetes and hypertension were noted. (Tr. 140.)
Plaintiff's cardiovascular and respiratory examinations were normal.
Id. He was seen again on April 15, 2003 with complaints of pain
under his left shoulder blade and left arm, from the elbow into the
neck. (Tr. 138.) Decreased range of motion was noted. Id.
Plaintiff was advised to begin a 1800 calorie, low-salt diet, and
was prescribed Naprosyn.[13] Id. Plaintiff was advised to see a
cardiologist, but declined due to lack of transportation. Id.
Plaintiff was seen again on April 29, 2003, and was referred to Dr.
Peter Paulus for an eye examination. (Tr. 136-37.) Plaintiff was
further advised to undergo an "RE scope," but plaintiff refused.
Id. On May 29, 2003, plaintiff again presented for treatment, and
was noted to suffer from hemorrhoids, hypertension, diabetes, left
shoulder pain, hematochezia,[14] macrocytosis,[15] and fatigue. (Tr.
134-35.) Plaintiff was continued on his current medications, and
was scheduled to see a cardiologist and ophthalmologist. (Tr. 135.)

---

[13]Naprosyn is indicated for use in the treatment of inflammation,
swelling, stiffness and joint pain.
http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

[14]The term "Hematochezia" refers to the passage of bloody stools.
Stedman's Medical Dictionary, 26th Edition, at 771.

[15]Macrocytosis, or macrocythemia, refers to the occurrence of an
unusually high number of large red blood cells in the blood. Stedman's Medical
Dictionary, 26th Edition, at 1050.

It is indicated that plaintiff communicated a need for transportation to these referral appointments, and that transportation was arranged for him. Id.

On June 3, 2003 plaintiff saw Dr. Peter Paulus, M.D. (as referred by Dr. Tim McPherson) for a "diabetic exam". (Tr. 126.) Examination revealed corrected visual acuity of 20/25 and 20/20, and the inability to abduct past midline since childhood. Id.

The Steele Clinic records indicate that plaintiff returned on June 4, 2003 with complaints of pain, pressure and shortness of breath, but his cardiology and respiratory examinations were essentially normal. (Tr. 132-33.) Plaintiff presented again the following day, and a sleep study was scheduled for October 8, 2003. (Tr. 120-21.) On July 7, 2003, plaintiff was seen with chest pains, but his cardiovascular examination was normal. (Tr. 128-29.)

Records from the Pemiscot Primary Care Center in Hayti, Missouri indicate that plaintiff was seen on July 14, 2003 for treatment related to diabetes, and that plaintiff further complained of hemorrhoids. (Tr. 143-44.) Plaintiff was prescribed Anusol suppositories[16] and Colace,[17] and instructed to return in three months. (Tr. 144.)

---

[16]Anusol is a hydrocortisone preparation indicated for use in the treatment of itching and swelling due to hemorrhoids. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682793.html

[17]Colace is indicated for use in the treatment of constipation. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601113.html

Records from the Steele Clinic indicate that plaintiff was seen on July 22, 2003 complaining of pain, apparently in his back, following a fall. (Tr. 177; 194-95.) Plaintiff was advised to curtail his alcohol use. (Tr. 195.) On September 10, 2003, plaintiff was seen again complaining of swelling and itching in both feet, hand pain and insomnia. (Tr. 192-93.) He was noted to have a rash and scaly lesions on his feet, and was further diagnosed with carpal tunnel syndrome. (Tr. 193.) He was prescribed Lamisil[18] and Vioxx[19], and was given bilateral wrist splints. Id.

On September 11, 2003, a residual functional capacity ("RFC") assessment form was completed by non-examining, non-treating consultant Christy Parker, who noted that plaintiff alleged disability due to diabetes, irregular heartbeat, shortness of breath, hypertension and decreased vision. (Tr. 149-156.) Ms. Parker reviewed plaintiff's medical records and concluded that plaintiff could occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; stand and/or walk six hours in an eight-hour day; and push and/or pull without limitation. (Tr. 150.) Ms. Parker noted that her review of plaintiff's medical records indicated normal examinations, and concluded that the medical evidence was inconsistent with plaintiff's symptoms. (Tr. 150,

---

[18]Lamisil is indicated for use in the treatment of fungal infections. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699061.html

[19]Vioxx is indicated for use to relieve pain, tenderness, inflammation and stiffness. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699046.html

154.)  On this same date, Holly Weems, Psy.D., reviewed plaintiff's medical records and completed a "Psychiatric Review Technique" form. (Tr. 157-170.)  Therein, Dr. Weems indicated that plaintiff suffered from affective disorders and substance addiction disorders, and concluded that plaintiff's alcohol abuse was a major factor in plaintiff's limitations.  Id.  Dr. Weems opined that plaintiff would have mild limitations related to his activities of daily living, and moderate limitations related to maintaining social functioning, and maintaining concentration, persistence or pace.  (Tr. 167.)

On October 17, 2003, plaintiff presented to the Steele Clinic for treatment of athlete's foot, and was noted to have a severe rash.  (Tr. 190-91.)  On November 17, 2003, plaintiff presented for treatment related to diabetes and shortness of breath. (Tr. 188-89.)  His exam was essentially normal.  Id.  On December 17, 2003, plaintiff presented for treatment and was noted to have right shoulder pain and carpal tunnel syndrome.  (Tr. 186-87.)  He was continued on Vioxx.  (Tr. 187.)  Plaintiff was seen again on January 16, 2004, and was continued on his medications.  (Tr. 184-85.)  On February 16, 2004, plaintiff was seen for treatment for osteoarthritis, and was given Toprol, Lisinopril, and Mobic.[20]  (Tr. 182-83.)  Plaintiff was seen again on March 1, 2004, and was noted to have a mass on his right leg.  (Tr. 180-81.)  He was referred for

---

[20]Mobic, or Meloxicam, is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601242.html

surgery, but stated he was unable to obtain transportation. (Tr. 181.) On April 1, 2004, plaintiff's medications were refilled and he was advised to return to Dr. Gubin. (Tr. 178-79.)

Dr. Gubin's cardiology office note of May 25, 2004 indicates that plaintiff was examined by Jenny McWilliams, an acute care nurse practitioner ("ACNP"), on May 25, 2004 with a complaint of sharp, daily chest pain without radiation. (Tr. 209.) He denied shortness of breath, but complained of occasional dizziness. Id. He was noted to be taking Lisinopril, Bextra[21], aspirin, folic acid, Toprol, Actos[22] and Nitroglycerine spray. Id. Physical examination was normal. Id. Nurse McWilliams indicated that Dr. Gubin wished to perform a cardiac catheterization, but plaintiff voiced a concern related to his lack of reliable transportation. Id.

On January 6, 2004, Dr. Azharuddin examined plaintiff and completed a disability evaluation form. (Tr. 172-73.) Therein, Dr. Azharuddin noted as follows: "He has been doing much better than last year with treatment. He was advised for cardiac catheterization but he never returned to see cardiologist." (Tr. 172.) Plaintiff complained of chest pain with brisk walking, but Dr. Azharuddin noted no heart disease, and found his pulmonary function to be normal. (Tr. 172.) Dr. Azharuddin diagnosed

_____

[21]Bextra is used to treat the pain, tenderness, inflammation, and stiffness associated with arthritis.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a602011.html

[22]Actos is indicated for use in the treatment of diabetes.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699016.html

diabetes, hypertension, chest pain and obesity, and noted that plaintiff was taking aspirin, Toprol, Lisinopril,[23] Actos,[24] Metformin,[25] and folic acid.[26] (Tr. 173.) Dr. Azharuddin recommended that plaintiff undergo cardiac catheterization, and checked a box indicating a finding that plaintiff had a disability preventing him from engaging in employment or gainful activity befitting his age, training experience or education. Id.

Records from the Steele Clinic indicate that plaintiff was seen on May 3, 2004, and had an unremarkable exam. (Tr. 234.) A myocardial perfusion scan performed on May 11, 2004 revealed normal cardiac function, and no signs of stress-induced ischemia at maximum exercise. (Tr. 236.) Plaintiff was seen again on June 16, 2004, for evaluation regarding blood in his stool. (Tr. 230.) He was advised to take Actos, Bextra, aspirin and folic acid, and to restrict his diet. (Tr. 231.) Plaintiff was seen in follow-up for this problem on July 16, 2004; August 3, 2004; and September 3, 2004, and was continued on his current medications and treatment. (Tr. 227-29; 224-26; 221-23.)

---

[23]Lisinopril is indicated for use in the treatment of hypertension. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a692051.html

[24]Actos is indicated for use in the treatment of diabetes. http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/500036.html

[25]Metformin is indicated for use in the treatment of diabetes. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a696005.html

[26]Folic acid is a B-Complex vitamin used by the body to create red blood cells. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682591.html

The Steele Clinic records indicate that plaintiff was seen on December 3, 2004 with complaints of intermittent numbness and tingling in his hands, and was further noted to have low back pain. (Tr. 240.) Plaintiff's medications were renewed, and he was referred for an MRI of his lumbar spine. (Tr. 241.) An MRI was performed on December 8, 2004, and revealed degenerative disc disease at L4-L5, "very mild" grade I anterior spondylolisthesis of L5 vertebral body at S1, and no focal bulges or herniations. (Tr. 244.)

On December 9, 2004, plaintiff presented to Nurse Jennie Bourne, RN, ANP, for evaluation related to his hand complaints. (Tr. 246.) Nurse Bourne noted that plaintiff complained of numbness and tingling in both hands, symptoms which worsened at night. Id. She noted plaintiff was taking aspirin, Bextra, Actos and folic acid. Id. On exam, Nurse Bourne noted no point tenderness and full range of motion without crepitation or defects, but decreased sensation in the thumb and index finger of the left hand. Id. She referred plaintiff for nerve conduction studies. (Tr. 246.)

Plaintiff returned to the Steele Clinic office on December 28, 2004 with continued complaints of low back pain. (Tr. 238-39.) He was noted to have a decreased range of motion. Id. Plaintiff was continued on his current medications and treatment. (Tr. 239.)

Records from Nurse Bourne's office indicate that plaintiff underwent nerve conduction testing at St. Francis Medical Center on

December 29, 2004, and visited Nurse Bourne's office on December 30, 2004, for follow-up. (Tr. 247.) Nurse Bourne noted that the testing revealed moderate bilateral carpal tunnel syndrome with mild sensory motor polyneuropathy. Id. Nurse Bourne advised plaintiff that, if he began experiencing constant numbness, he may require surgery. Id. Nurse Bourne further advised plaintiff that he could undergo injections to relieve his current symptoms, but plaintiff declined, stating that he wished to continue using the splints. Id. Nurse Bourne's notes indicate that plaintiff advised that he would contact her office if his symptoms worsened. (Tr. 247.)

## IV.  THE ALJ'S DECISION

The ALJ found that plaintiff was not under a disability as defined in the Social Security Act, 20 C.F.R. §§ 416.920(f) and 404.1520(f). (Tr. 20.) The ALJ found that plaintiff was unable to perform his past relevant work as a factory laborer, grinder or materials handler, and that he had not engaged in substantial gainful activity during the adjudicative period. (Tr. 19.) The ALJ found that plaintiff had no transferable work skills within his residual functional capacity, and that plaintiff was considered an individual of advanced age with a limited education. Id. The ALJ further found that although the medical evidence established that plaintiff had various severe impairments, he did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations Number

4.  <u>Id.</u>

The ALJ found that plaintiff was restricted from work requiring visual acuity and work involving heights and moving machinery.  <u>Id.</u>  The ALJ further found that plaintiff had the residual functional capacity to lift and/or carry up to 25 pounds frequently and 50 pounds occasionally; and stand, walk, and/or sit for up to six hours in an eight-hour day.  <u>Id.</u>  The ALJ found that, based on an exertional capacity for medium work, the plaintiff's age, education, and work experience, considered with 20 C.F.R. § 404.1569, and Table 3, Rules 203.18 and 203.19 supported a finding of "not disabled."  (Tr. 20.)  The ALJ noted that this finding was supported by an impartial vocational expert.  <u>Id.</u>

Citing 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, the ALJ found that plaintiff's allegations of disabling pain were not credible, as plaintiff's course of treatment described in the reports of the treating and examining physicians did not match the level of severity plaintiff claimed.  (Tr. 17-18.) Specifically, the ALJ noted that plaintiff testified he was unable to work due to fatigue, hypertension, cardiac problems for which he took Nitroglycerin, and hand numbness for which he wore braces. (Tr. 18.)  However, the ALJ noted that plaintiff neither wore wrist braces nor brought his Nitroglycerin to the hearing, and more generally noted that plaintiff's course of treatment did not support the level of severity he described.  <u>Id.</u>  Regarding plaintiff's

allegations of vision problems, the ALJ noted that the medical evidence demonstrated that plaintiff has suffered from an inability to abduct in his left eye for most of his life, and that he had been able to work despite this condition. (Tr. 18.) The ALJ further noted that the medical evidence documented no worsening of this condition. Id. The ALJ finally noted the absence of continuous side effects from medication, and that, when side effects were noted, plaintiff's dosages were adjusted or the medication was changed. Id.

## V.    DISCUSSION

To be eligible for Social Security disability benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Services, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner utilizes a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by considering the claimant's work activity. If the claimant is engaged in substantial gainful activity, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe impairment," meaning one which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant has the residual functional capacity to perform his or her past relevant work. If so, the claimant is not disabled. If not, the burden then shifts to the Commissioner to prove that there are other jobs that exist in substantial numbers in the national economy that the claimant can perform. Pearsall, 274 F.3d at 1217; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). Absent such proof, the claimant is declared disabled and becomes entitled to disability benefits.

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Young v. Shalala, 52 F.3d 200 (8th Cir. 1995), citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Substantial evidence is less than a preponderance but enough that a reasonable person would find adequate to support the conclusion. Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998). To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ;

2. The plaintiff's vocational factors;

3. The medical evidence from treating and consulting physicians;

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;

5. Any corroboration by third parties of the plaintiff's impairments;

6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the plaintiff's impairment.

Stewart v. Secretary of Health & Human Services, 957 F.2d 581, 585-86 (8th Cir. 1992), quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Court must also consider any "evidence which fairly

detracts from the ALJ's findings." <u>Groeper v. Sullivan</u>, 932 F.2d 1234, 1237 (8th Cir. 1991); <u>see also</u> <u>Briggs</u>, 139 F.3d at 608. However, where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. <u>Briggs</u>, 139 F.3d at 608; <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992), <u>citing</u> <u>Cruse</u>, 867 F.2d at 1184.

In the case at bar, plaintiff claims that the ALJ's decision that plaintiff was not disabled and that he retained the residual functional capacity ("RFC") for medium work was not supported by substantial evidence on the record as a whole, and specifically argues that the ALJ failed to properly consider the opinion of Dr. Azharuddin. Plaintiff further argues that the ALJ failed to properly assess plaintiff's credibility in accord with <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984), in that he failed to make specific findings in discrediting plaintiff's subjective complaints. Finally, plaintiff argues that the hypothetical the ALJ posed to the vocational expert did not fully encompass plaintiff's limitations. The undersigned will first address plaintiff's arguments concerning whether the ALJ's decision regarding disability and RFC was based upon substantial evidence on the record as a whole.

A. <u>Disability and RFC Determination</u>

As set forth, <u>supra</u>, the ALJ in this matter determined

that plaintiff's impairments, although severe, were not of listing-level severity. (Tr. 19.) The ALJ further found that plaintiff retained the residual functional capacity for medium work, and could perform other work existing in substantial numbers in the national economy. Plaintiff claims that the ALJ's decision is not based upon substantial evidence on the record as a whole for the reason that it fails to consider the medical evidence of record, and fails to properly consider Dr. Azharuddin's opinion.

Residual functional capacity is what a claimant can do despite his limitations. 20 C.F.R. § 404.1545, Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). At the fourth step, while the burden of proof is still upon the claimant, the Commissioner determines whether the claimant has the RFC to perform his or her past relevant work, and if so, the claimant is determined not disabled. Pearsall, 274 F.3d at 1217. If not, however, the process continues to step five, where the burden shifts to the Commissioner to prove both that the claimant retains the RFC to perform other kinds of work, and that such work exists in substantial numbers in the national economy. Singh v. Apfel, 222 F.3d 448,451 (8th Cir. 2000), citing Nevland, 204 F.3d at 857. The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Anderson v. Shalala, 51 F.3d 777, 779

(8th Cir. 1995); <u>Goff v. Barnhart</u>, 421 F.3d 785, 793 (8th Cir. 2005); 20 C.F.R. §§ 404.1545(a), 416.945(a). A claimant's RFC is a medical question, however, and some medical evidence, along with all other relevant, credible evidence in the record, must support the ALJ's RFC determination. <u>Id.</u>; <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711-12 (8th Cir. 2001); <u>Lauer</u>, 245 F.3d at 703-04; <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. <u>Hutsell</u>, 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant can lift a certain weight or walk a certain distance. <u>Pearsall</u>, 274 F.3d at 1217; <u>McKinney</u>, 228 F.3d at 863.

The undersigned turns first to plaintiff's assertion that the ALJ failed to properly credit the opinion of Dr. Azharuddin. Ordinarily, a treating physician's opinion should not be discarded and is entitled to substantial weight. <u>Singh</u>, 222 F.3d at 452, <u>citing</u> <u>Ghant v. Bowen</u>, 930 F.2d 630, 639 (8th Cir. 1991.) A treating physician's opinion will be granted controlling weight, provided it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. <u>Singh</u>, 222 F.3d at 452, <u>citing</u> <u>Kelly v. Callahan</u>, 133 F.3d 583, 589 (8th Cir. 1998.) This

is so because a treating source has the best opportunity to observe
and evaluate a claimant's condition,

> since these sources are likely to be the
> medical professionals most able to provide a
> detailed, longitudinal picture of [a
> claimant's] medical impairment(s) and may bring
> a unique perspective to the medical evidence
> that cannot be obtained from the objective
> medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations.

> 20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion is not given
controlling weight, the Commissioner must look to various factors
in determining what weight to afford the opinion. Id. Such factors
include the length of the treatment relationship and the frequency
of examination, the nature and extent of the treatment relationship,
whether the treating source provides support for his findings,
whether other evidence in the record is consistent with the
findings, and the treating source's area of specialty. Id. The
Regulations further provide that the Commissioner "will always give
good reasons . . . for the weight [given to the] treating source's
opinion." Id.

In this case, the ALJ properly evaluated Dr. Azharuddin's
opinion and gave good reasons for discrediting it. First, the ALJ
noted that Dr. Azharuddin, in his January 6, 2004 report, noted that
plaintiff was "doing much better" with treatment than in the year

2003. (Tr. 16); See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment are incompatible with a finding of disability). The ALJ further noted the absence of any "longitudinal confirmation" of "consistently severe limitations that would preclude the performance of a wide range of medium exertional work," and noted that Dr. Azharuddin's opinions were brief and conclusory, and unsupported by any objective testing. (Tr. 16); See Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (ALJ properly discredited treating cardiologist's conclusion that claimant was disabled because it was conclusory and unsupported by objective medical evidence). The ALJ further noted that Dr. Azharuddin's conclusions that plaintiff was disabled were inconsistent with his own treatment records. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (a treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions). The undersigned therefore finds that the ALJ's decision to discredit the opinion of Dr. Azharuddin is supported by substantial evidence and good reasons.

Plaintiff further submits that there was insufficient evidence to support the ALJ's decision that plaintiff was not disabled and retained the residual functional capacity to perform medium work. However, a review of the ALJ's decision reveals that it was based upon substantial evidence on the record as a whole. The ALJ noted that plaintiff sought intermittent treatment for

various complaints, and noted that the medical records consistently documented essentially normal physical examinations and few abnormal findings. (Tr. 16.) More specifically, the ALJ noted plaintiff's negative chest x-ray in March of 2003, and further noted plaintiff's unremarkable findings upon eye examination in June of 2003. Id. The ALJ noted that plaintiff underwent a myocardial perfusion study on May 11, 2004, which revealed normal resting left ventricular ejection fraction of 70%, normal wall motion analysis, and no signs of stress-induced ischemia at maximum exercise. (Tr. 17.) The ALJ also noted plaintiff's cardiac evaluation on May 25, 2004, performed following his complaints of left mid-sternal chest pain, the findings of which revealed S1S2 without murmur, gallop or rub, and a regular heart rate. Id. The ALJ further noted plaintiff's December 8, 2004 MRI which, despite some abnormal findings, did not persuasively substantiate plaintiff's allegations of total disability. Id. The ALJ also noted that Dr. Azharuddin stated that, although it was recommended that plaintiff undergo a cardiac catheterization, plaintiff failed to see a cardiologist. (Tr. 16; See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (failure to follow through with recommended treatment is an appropriate basis to deny disability benefits).

Regarding plaintiff's alleged psychiatric condition, the ALJ noted the lack of treatment records pertaining to psychiatric treatment, with the exception of a July 30, 2002 mental health

initial intake assessment from the Family Counseling Center, and a Psychiatric Review Technique Form dated September 11, 2003.  The ALJ noted that the Family Counseling Center intake assessment offered little more than a recitation of plaintiff's subjective complaints, and contained no evidence that a thorough psychological examination was performed.  Furthermore, as noted herein, <u>supra</u>, plaintiff never returned for treatment following this initial assessment.  Failure to seek medical treatment weighs against a finding of disability.  See <u>Wilson v. Chater</u>, 76 F.3d 238, 241 (8th Cir. 1996); <u>See also</u> <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023-24 (8th Cir. 1994).  The ALJ finally noted that the Psychiatric Review Technique Form reported only an assessment of affective disorder and a substance addiction disorder, which were not severe impairments.

The undersigned notes that the majority of the medical records, including the records from the Steele Clinic, consistently document normal cardiovascular, respiratory, musculoskeletal, and neurological examinations, and further document a conservative course of treatment.  <u>See</u> <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998)(conservative treatment is inconsistent with allegations of disabling pain).

Plaintiff finally argues that the ALJ erred by relying on the opinion of State agency consultant Christy Parker, who, in her report of September 11, 2003 opined that plaintiff could occasionally lift and carry 50 pounds; frequently lift and carry 25

pounds; sit, stand and/or walk six hours in an eight-hour day; and push and/or pull without limitation. (Tr. 16; 149-156.) Although more weight is generally given to the opinion of an examining source than a non-examining source, an ALJ must consider the opinions of state agency consultants, who are experts in both medicine and Social Security disability evaluation, as opinion evidence at the hearing level. See 20 C.F.R. §§ 404.1527(f) and 416.927(f).

In this case, the ALJ gave the proper weight to the opinion of the state agency consultant. A review of the record shows that, although the ALJ briefly discussed the consultant's opinion, he did not completely rely upon it in formulating either his disability determination or plaintiff's RFC. Furthermore, as discussed, supra, the ALJ went on to thoroughly discuss the other medical evidence of record which supported his decision. (Tr. 16-17.) The ALJ's mention of the state consultant's opinion, therefore, is not error.

Finally, plaintiff suggests that the ALJ failed to point to specific medical evidence that plaintiff was actually physically able to perform medium work. However, as discussed, supra, although an ALJ's RFC assessment must be supported by some medical evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant can lift a certain weight or walk a certain distance. Pearsall, 274 F.3d at 1217; McKinney, 228 F.3d at 863. For the reasons discussed, supra, the evidence in the record

provided a sufficient basis for the ALJ's decision.

Of further note are the aforementioned materials submitted to and reviewed by the Appeals Council following the ALJ's determination to deny benefits; namely the medical reports of Ms. Bourne dated December 9, 2004 and December 30, 2004 (Tr. 246-47); the medical records of Dr. McPherson dated December 3, 2004 through December 28, 2004 (Tr. 250-56); and the letter from plaintiff's attorney Anthony Bartels. (Tr. 257-60.) When new evidence is submitted and considered by the Appeals Council, the reviewing court must then determine "whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." <u>Richmond v. Shalala</u>, 23 F.3d 1441, 1444 (8th Cir. 1994), <u>citing</u> <u>Nelson v. Sullivan</u>, 966 F.2d 363, 366 (8th Cir. 1992); <u>See also</u> <u>Frankl v. Shalala</u>, 47 F.3d 935, 938-39 (8th Cir. 1995). This requires the reviewing court to engage in the "peculiar task" of essentially speculating on how the ALJ would have weighed the new evidence. <u>Riley v. Shalala</u>, 18 F.3d 619, 622 (8th Cir. 1994). After review of the ALJ's decision, supplemented by the additional evidence submitted to the Appeals Council, the undersigned finds that the ALJ's decision is supported by substantial evidence on the record as a whole, and that the ALJ would not have viewed the new evidence as supporting a finding of disability. Although the records from Nurse Bourne do indicate a finding of mild carpal tunnel syndrome, the only mention of surgery

is the suggestion that surgery may be recommended in the future should plaintiff's symptoms worsen. (Tr. 248.) Nurse Bourne's records further indicate that plaintiff refused the injection treatments she offered to relieve his numbness and pain, stating that he would like to continue to use the splints and would contact her if his symptoms worsened. Id. Similarly, the records of Dr. McPherson indicate only some evidence of degenerative disc disease and very mild anterior spondylolisthesis, and do not indicate that plaintiff required surgery. (Tr. 255.) Had the foregoing medical evidence been before the ALJ in this matter, it would not have compelled a finding of disability. See Black v. Apfel, 143 F.3d 383, 386 (conservative treatment is inconsistent with allegations of disabling pain).

A review of the ALJ's decision reveals that he properly exercised his discretion and acted within his statutory authority in evaluating the evidence on the record as a whole. The ALJ based his decision on all of the relevant, credible evidence of record, including the objective medical evidence and the medical opinion evidence, and further properly discredited the opinion of Dr. Azharuddin after conducting the proper analysis. For the foregoing reasons, the undersigned finds that the ALJ's determinations regarding plaintiff's impairments and his RFC were based upon substantial evidence on the record as a whole.

B. Plaintiff's Subjective Complaints

Plaintiff next contends that the ALJ's decision runs afoul of _Polaski_ in that it erroneously found plaintiff's testimony regarding his subjective complaints not credible. The undersigned disagrees.

"A claimant has the burden of proving that his disability results from a medically determinable physical or mental impairment." _Polaski_, 739 F.2d at 1321. However, testimony regarding pain is necessarily subjective in nature, as it is the Plaintiff's own perception of the effects of his alleged physical impairment. _Id._; _Halpin v. Shalala_, 999 F.2d 342, 346 (8th Cir. 1993). Because of the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect. _Polaski_ at 1321-22. In _Polaski_, the Eighth Circuit addressed this difficulty and established the following standard for the evaluation of subjective complaints:

> "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions."

<u>Id.</u> at 1322.

Although the ALJ is not free to accept or reject the claimant's subjective complaints based upon personal observations alone, he or she may discount such complaints if there are inconsistencies in the evidence as a whole. <u>Id.</u> The "crucial question" is not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from working. <u>Gregg v. Barnhart</u>, 354 F.3d 710, 713-14 (8th Cir. 2003). When an ALJ explicitly considers the <u>Polaski</u> factors and discredits a claimant's complaints for a good reason, that decision should be upheld. <u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001). The credibility of a claimant's subjective testimony is primarily for the ALJ, not the courts, to decide, and the court considers with deference the ALJ's decision on the subject . <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005).

In the instant matter, although the ALJ did not specifically cite <u>Polaski</u>, he listed factors therefrom and specifically cited 20 C.F.R. § 404.1529, which corresponds with <u>Polaski</u> and credibility determination. (Tr. 17.) The ALJ concluded that although plaintiff's impairments could reasonably be expected to produce some of the pain and other symptoms alleged, the allegations of plaintiff as to the intensity, persistence and limiting effects of his symptoms were not well supported by the

probative evidence and were not wholly credible.  The ALJ then set forth numerous inconsistencies in the record to support his conclusion that Plaintiff's complaints were not credible.  (Tr. 17-18.)

The ALJ noted that, in general, plaintiff's course of treatment did not support the level of severity he described during his testimony.  (Tr. 18.)  The ALJ noted that plaintiff did not wear his wrist braces or bring his Nitroglycerin to the hearing, although he claimed to need both of these to manage his pain.  Id.; Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (ALJ's personal observations of claimant's demeanor during the hearing is completely proper in making credibility determinations).  The ALJ noted that the medical records consistently documented normal physical examinations, and further noted the lack of subjective medical evidence of end organ damage.  Id.  The ALJ noted that, although the medical evidence documents plaintiff's inability to abduct in his left eye, plaintiff has had this limitation for most of his life and has worked nevertheless, and further noted that the medical evidence documented no worsening of plaintiff's vision.  Id.; Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994) (condition that is not disabling during years of work and has not worsened cannot serve as basis for proving present disability).  The ALJ further noted no reports of continuous side effects from medication, and that, when plaintiff did mention side effects, his medication was either

adjusted or changed. (Tr. 18.) Finally, earlier in his decision, the ALJ had noted that plaintiff failed to follow through with a cardiac catheterization as recommended by Dr. Azharuddin. (Tr. 16); See Haley v. Massanari, 258 F.3d 742, 747-48 (8th Cir. 2001) (ALJ properly discredited subjective complaints of disabling symptoms because of failure to follow through with recommended treatment); see also Dunahoo, 241 F.3d at 1039-40 (failure to follow through with recommended treatment is an appropriate basis to deny disability benefits).

The medical records show that plaintiff's course of treatment has been primarily conservative, and that plaintiff has not sought aggressive treatment for his alleged back pain, carpal tunnel syndrome, or other ailments; specifically, that plaintiff failed to return to the Family Counseling Center following his initial assessment, and declined offered treatment, other than wrist splints, for his carpal tunnel syndrome. (Tr. 197; 247); See Black,143 F.3d at 386 (conservative treatment is inconsistent with allegations of disabling pain); see also Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment is not suggestive of disabling back pain).

A review of the ALJ's decision shows that, in a manner consistent with and as required by Polaski, the ALJ considered plaintiff's subjective complaints on the basis of the entire record before him, and set out numerous inconsistencies detracting from

plaintiff's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Because the ALJ's credibility determination is supported by good reasons and substantial evidence on the record as a whole, this Court must defer to the ALJ's credibility determination. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992); <u>Hogan</u>, 239 F.3d at 962.

C.  <u>Hypothetical Posed to Vocational Expert</u>

Plaintiff finally alleges that the ALJ erred at step five of his determination by posing an incomplete hypothetical question to the vocational expert. Defendant submits that the ALJ's findings at step five were proper in that the ALJ properly posed a hypothetical question to the vocational expert consisting of plaintiff's credible limitations.

The following is an excerpt from the portion of the hearing transcript related to the hypothetical question the ALJ posed to the vocational expert:

> Q.  (By the ALJ) We're going to ask you some hypothetical questions today, and the questions will refer to someone of the same age, education and past relevant work history as Mr. Searcy and who could read or write simple English. Hypothetical number one, I'm going to refer to the state agency assessment which we have here. Please assume the individual . . . would be limited to occasionally lifting up to 50 pounds -- lifting and, or carrying up to 50 pounds and frequently lifting or carrying up to 25 pounds, sitting, standing, walking six out of eight hours each --

. . .

>also assume that the individual would not be able to work on jobs requiring near acuity or fine vision skills and also please assume that the person could not work around workplace hazards like moving, dangerous machinery or unprotected heights. Did you get all those?

>A. (By the vocational expert) Yes.

>Q. Could a person with those limitations do any of the past jobs you've identified? Mr. Meyers?

>A. No, sir.

>Q. Would there be any other jobs that could be done by a person with all those limitations? (Tr. 274-77.)

The vocational expert then went on to testify that such an individual could work as a janitor or as a food preparation worker, both of which are medium, unskilled jobs which existed in substantial numbers in Missouri. (Tr. 276-77.)[27]

A hypothetical question posed to a vocational expert must capture the consequences of a claimant's impairments. Pickney v. Chater, 96 F.3d 294, 297 (8th Cir. 1996). However, the hypothetical

---

[27]As noted, supra, the ALJ posed a second hypothetical to the vocational expert, asking the expert to assume that the individual could sit, stand and walk for six out of eight hours, but could lift and/or carry less than ten pounds and could never climb, balance, stoop, kneel, crouch or crawl, and would be unable to handle job duties involving fine visual skills or depth perception and also would have to take numerous unscheduled work breaks throughout the day. The vocational expert testified that there would be no jobs, either past relevant or otherwise, that such an individual could perform. (Tr. 277.)

"need only include those impairments and limitations found credible by the ALJ. <u>Dukes v. Barnhart</u>, 436 F.3d 923, 928 (8th Cir. 2006), <u>citing</u> <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 750 (8th Cir. 2005).

The factors included in the hypothetical to the vocational expert in this case were supported by the record and were consistent with the ALJ's credibility determination.  It is further clear the vocational expert's analysis and opinion included all factors the ALJ accepted as true, and the factors as set forth by plaintiff. Plaintiff submits that the ALJ erred in failing to include plaintiff's alleged limitations of depression and bilateral carpal tunnel syndrome.  However, as discussed, <u>supra</u>, substantial evidence supports the ALJ's determination that plaintiff's allegations of these impairments as precluding all work activity were not credible. After carefully reviewing the record, the undersigned finds no error in the hypothetical posed to the vocational expert, or in the ALJ's determination of plaintiff's RFC and work abilities.

Therefore, for all of the foregoing reasons, the Commissioner's decision is supported by substantial evidence on the record as a whole.  Because there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a different outcome, or because another court could have decided the case differently.  <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir.  2001; <u>Browning</u>, 958 F.2d at 821.  Accordingly, the

decision of the Commissioner in denying Plaintiff's claims for benefits should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is hereby affirmed and Plaintiff's Complaint is hereby dismissed with prejudice.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2006.